1              IN THE UNITED STATES DISTRICT COURT

2                      DISTRICT OF ARIZONA

3

4     UNITED STATES OF AMERICA

5     vs.                              CR-07-1838-TUC-RCC

6     DONALD BIARD MacGUINEAS, III

7                   Defendant.
      _____

8
                                        December 7, 2009
9                                        Tucson, Arizona

10

                           SENTENCING
11

12         BEFORE THE HONORABLE RANER C. COLLINS
                UNITED STATES DISTRICT JUDGE
13

14
                  A P P E A R A N C E S
15

16

      For the Government:      Beverly K. Anderson
17                             Assistant U.S. Attorney

18    For the Defendant:       Edward H. Laber
                               Attorney at Law
19
      Court Reporter:          Erica R. Grund, RMR, CRR
20                             Official Court Reporter
                               405 W. Congress Street
21                             Tucson, Arizona 85701

22

23

24

25       Proceedings prepared by computerized realtime
                         translation

1                    P R O C E E D I N G S

2          THE COURT:  CR-07-1838, United States of

3    America vs. Donald Biard MacGuineas, III.  Show

4    that he is present, in custody.  Show that

5    Mr. Laber appears on his behalf, Ms. Anderson

6    appears on behalf of the Government.  This is the

7    time set for sentencing.

8          Mr. Laber, if you and your client would

9    approach the podium, please.

10         Good morning, Mr. MacGuineas.

11         THE DEFENDANT:  Good morning.

12         THE COURT:  You have pled guilty to a

13   charge of transmitting in interstate commerce a

14   communication threatening to injure another person;

15   is that correct?

16         THE DEFENDANT:  Yes.

17         THE COURT:  I assume that you pled guilty

18   because you believe that you are guilty; is that

19   correct?

20         THE DEFENDANT:  In hindsight, I'm not so

21   sure, after I've studied the law more.

22         THE COURT:  Mr. MacGuineas, I have read

23   everything you have written, I think, including the

24   communications, the emails that are the subject of

25   this case.

```
 1              THE DEFENDANT:  Uh-huh.

 2              THE COURT:  They're threats.  They're

 3    threats to other people.  They meet the definition

 4    of the law.  Okay?

 5              THE DEFENDANT:  Okay.

 6              THE COURT:  Mr. Laber is your, what, fifth

 7    or sixth attorney?

 8              THE DEFENDANT:  Fifth.

 9              THE COURT:  All right.  Most of your

10    attorneys have tried to answer your questions; is

11    that correct?

12              THE DEFENDANT:  No, sir.

13              THE COURT:  Did Mr. Laber try and answer

14    your questions?

15              THE DEFENDANT:  He did.

16              THE COURT:  He did a better job than the

17    others?

18              THE DEFENDANT:  Yes, sir.

19              THE COURT:  All right.  Have you read your

20    presentence report?

21              THE DEFENDANT:  Yes.

22              THE COURT:  And you wrote -- you wrote

23    some notes about the presentence reports.  That's

24    how I know you read it.  Okay?

25              You have a plea agreement, Mr. MacGuineas,
```

1    that gave you a sentencing range of 18 to 24

2    months; is that correct?

3            THE DEFENDANT:  That's what I recall.

4            THE COURT:  You are now at day 796.  I'm

5    not that good at math, but I think that's --

6            DEFENSE COUNSEL:  It's 26 months.

7            THE COURT:  It's 26 months, right.  And

8    your plea agreement said that the Government was

9    going to recommend that you get the 18-month

10   sentence.

11           THE DEFENDANT:  Uh-huh.

12           THE COURT:  Correct?

13           THE DEFENDANT:  Uh-huh.

14           THE COURT:  So we are eight months past

15   what could have been your sentence in this case; is

16   that correct?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Do we want to prolong it any

19   more?

20           THE DEFENDANT:  No.

21           THE COURT:  All right.  Did anybody force

22   you or threaten you to make you plead guilty?

23           THE DEFENDANT:  I decline to answer that.

24           THE COURT:  Mr. MacGuineas, I can't

25   believe anybody forced you to do anything, and from

1    what I've read -- but you can decline to answer it

2    if you want to.

3            Have you been satisfied with your

4    attorney's services in this case?

5            THE DEFENDANT:  I decline to answer that.

6            THE COURT:  All right.  I'm going to give

7    him a chance first to speak on your behalf.  I'll

8    give you a chance to make any comments you'd like

9    to make.

10           Mr. Laber?

11           MR. LABER:  Thank you, Your Honor.  Well,

12   I guess the place to begin is what happens now.

13           I'm assuming that Mr. -- that Your Honor's

14   accepted the agreement, and he's going to get time-

15   served today, but he's not quite out of the woods.

16   He's going to be on supervised release.

17           And my impression -- and some of the

18   things I have to say are for him to hear.  He may

19   or may not agree with what I have to say, but maybe

20   they'll ring true to him after he thinks about

21   them.

22           But a lot of this case is focused on what

23   others -- what he perceives others have done to

24   him.  I don't have any doubt that Mr. MacGuineas at

25   some point was, and he still appears to me to be, a

1   very kind and gentle person who became something

2   else, and I have to assume that he was injured at

3   some point by someone because of something that

4   they did or didn't do to his family, and what he

5   perceived to be an injury festered and became

6   venomous.

7         And he needs to start thinking about what

8   he did to contribute to his presence here.  I mean,

9   I look around the courtroom, and none of his family

10  members are in jail.  Only he's in jail.

11        THE COURT:  His family members are also

12  not here.

13        MR. LABER:  They're not here.  And I'm

14  hoping that today, and I told him, I think that

15  it's important that he hears out loud himself say

16  I'm sorry.  He has to say that for his own benefit,

17  because once he hears himself say that, maybe he

18  can start on a different road, something that's

19  going to lead him somewhere other than where he's

20  been.

21        I will be quite frank.  He's been nothing

22  but a gentleman with me since I've been

23  representing him.  And he obviously has the

24  capacity.  He's extremely intelligent.  Aside from

25  these things, he's been writing music.  He's been

1    doing a lot of things.

2         And there can be a lot of good things

3    ahead for him, but he has to make that choice to

4    follow a certain -- a certain road that nobody else

5    can force him to do.

6         But I would sure hate to see him get out

7    and then not do well on supervised release and end

8    up back in jail, but in the end, that's up to him.

9         One housekeeping matter, Your Honor.  When

10   he was arrested -- he asked me about this this

11   morning.  He's going to be released to a halfway

12   house.  There was, I guess it was $210 that he

13   had.  I don't know if the marshal has that now, but

14   it would be nice if he could get that, because I

15   don't think he has any money.  And if they have it,

16   maybe they'll give it to him today.  If not, maybe

17   we can get it to him.  He's certainly going to need

18   that.

19        And with that, the rest of what needs to

20   be said on Mr. MacGuineas' behalf has to be said by

21   Mr. MacGuineas, so I pass to him.

22        THE COURT:  Mr. MacGuineas, is there

23   anything you want to say this morning?

24        THE DEFENDANT:  Yeah.  I'm unequivocally

25   sorry that I sent those emails, and I'm sorry for

1   the -- for the bad effect that they had on my

2   family, and I'll absolutely not repeat the mistake.

3           THE COURT:  Is there anything else you

4   want to say?

5           THE DEFENDANT:  I guess the case that's

6   been tried to -- some have tried to make a case

7   that I had some actual intent to carry out the

8   actions I described in the emails and to injure

9   people, and that's nonsense, and there is a lot of

10  evidence that that's nonsense, but I won't get into

11  that.

12          I'll just say that I've never been a

13  violent person, I'm not about to be a violent

14  person, I never considered being a violent person,

15  and so I kind of personally don't appreciate the

16  suggestion that I would have done something like

17  that.

18          You know, accepting responsibility for

19  what I wrote is a different thing from saying that

20  I would ever do anything like that.

21          And I'm looking forward to getting back to

22  work on music and trying to earn some income from

23  it.  I've been working on it for the past two years

24  in jail, without any instruments, without any way

25  of hearing or producing the music, but I've been

1  working on it on paper, and I'm looking forward to,

2  whenever I'm released, to getting back to the

3  musical equipment so I can produce actual music.

4          THE COURT:  All right.  Ms. Anderson, I

5  did receive your memorandum also.  I've read it.

6          MS. ANDERSON:  Your Honor, first of all,

7  I'm wondering if the record needs to be clarified a

8  little bit.  The defendant was asked the question

9  if anyone forced or threatened him to plead guilty,

10  and he declined to answer that question.

11          Furthermore, when asked if he was

12  satisfied with the services of his attorney, he

13  again refused to answer the question.  I'm

14  wondering if the record needs to be clarified.

15          THE COURT:  I don't think so.

16          MS. ANDERSON:  May I approach the podium,

17  Your Honor?

18          THE COURT:  Sure.

19          Mr. MacGuineas, if you and Mr. Laber would

20  have a seat, please.

21          MS. ANDERSON:  Your Honor, of all the

22  defendants that I've prosecuted over the 20-plus

23  years that I've been practicing law, this one

24  concerns me the most, and what concerns me, Your

25  Honor, is that when you take a look at the threats

1   that he sent to his family members, they're

2   chilling.  Not only are they threatening and meet

3   the elements of the statute, but they're chilling.

4        When the defendant was evaluated, it was

5   determined that he had a schizoaffective disorder,

6   personality disorder, he was persistently and

7   acutely disabled, and a danger to others.

8        The doctor who did the evaluation of

9   Mr. MacGuineas back in the Bureau of Prisons also

10  concluded that although he was competent to stand

11  trial, there is a moderate to a high risk of

12  violence due, in part, to the fact that the

13  defendant doesn't understand or appreciate that he

14  has a problem.

15       And Your Honor, nothing really has changed

16  in terms of the defendant's condition from when he

17  first sent those emails to his family members.

18  He's not on any medication.  He doesn't believe

19  that he has any kind of issues.

20       And quite frankly, the Government is

21  concerned for the welfare of the community.  The

22  Government believes that the defendant is a risk to

23  the community, and I hope that when the defendant

24  gets into the halfway house and he transitions back

25  into the community, he can appreciate and

1  understand that he does have some issues and he

2  does need help.

3          And the Government also hopes that he

4  accepts that help and that he willingly takes

5  medication.  I'm urging the Court to order him to

6  take medication, and it's the Government's hope

7  that he, in fact, does take the Court's order

8  seriously and complies.

9          Thank you.

10          THE COURT:  Thank you.

11          Mr. MacGuineas, if you and your attorney

12  would return back to the podium.

13          Mr. MacGuineas, I don't know you.  All I

14  know about you is what I've read, and I've read

15  quite a bit.  And you'll recall time after time we

16  came into court, getting ready for a sentencing,

17  and it didn't go because you had a new attorney or

18  whatever.  And I said, I haven't read the report

19  yet.  I'm not going to read the report until it's

20  time for sentencing.  It's too thick, too much to

21  read.

22          I was quite shocked when I read the

23  report.  I expected someone with a rather long

24  criminal history.  You don't have one.  This is

25  it.

1          I'm not sure what happened,

2    Mr. MacGuineas.  I'm not sure if it was

3    frustration, a mental health issue or what.  I'm

4    not sure what happened, but we need for it not to

5    happen again.

6          You have now got yourself in the system,

7    Mr. MacGuineas, that really plays no favorites.  It

8    chews up people and it spits them out.  This is not

9    a system you want to be in, so you need to make

10   sure you don't get yourself involved in the system

11   again.

12         Over the last couple of years, some

13   doctors have said you need medication.  Some may

14   have said you don't.  I really don't know whether

15   you need medication or not.  If you do, you need to

16   take it.

17         You are a bright man.  I looked at this

18   report.  You graduated from Stanford.  You're

19   considered to be a computer whiz by some.  I read a

20   letter from -- do you know a guy named Kermit

21   Roosevelt?

22              THE DEFENDANT:  (Nodding.)

23              MR. LABER:  You have to answer "yes."

24              THE DEFENDANT:  I think your question

25   was -- yeah, he's my friend from childhood.

1      THE COURT:  Okay.  He said -- part of the

2  end of his letter, he says, "I believe Biard is

3  neither dangerous nor malicious, and I do not

4  believe there is any purpose to be served by his

5  prolonged incarceration."

6      The only person prolonging incarceration

7  is you.

8      "I've spoken to Biard many, many times

9  over the past year and a half, and I can confirm

10  that he feels remorse and empathy.  He always has.

11  As far back as our high school days, Biard was one

12  of the more kind and more helpful members of the

13  student body.  That is, in part, why his fellow

14  students elected him to positions of honor and

15  responsibility.

16      "I am deeply saddened to see my friend in

17  his current circumstances.  I understand that his

18  actions set all this in motion, but I believe the

19  penalties he accepted in the plea agreement are

20  more than enough punishment."

21      He wrote that letter on March 23, seven,

22  eight months ago, when you were just about ready to

23  come to sentencing the first time.  Okay?

24      You said you were sorry here today,

25  Mr. Biard, Mr. MacGuineas.  I don't know if you are

1   or not.  You said it.  I don't know if you really

2   mean it.

3          Your family hopes that you mean it,

4   because that's where you directed all these emails

5   to.  You directed threats to other people too, but

6   the emails were sent to your family members.  And

7   you know, it took lot for them to finally say, we

8   can't take this anymore, to report this to the

9   police.

10          And then, when they come to talk to you

11   and arrest you, they find, what, an arsenal.  You

12   say you would never have carried out these threats,

13   would never hurt anybody.  The evidence suggests

14   otherwise, Mr. MacGuineas, when you've got over 20

15   -- how many guns and rifles did you have?

16          THE DEFENDANT:  The FBI reported 25, which

17   is about 23 more than I could ever hold at one

18   time.

19          THE COURT:  I agree you can't hold them

20   all at one time, but you had that many; correct?

21          THE DEFENDANT:  That's what the FBI says.

22          THE COURT:  It says 20 of them were

23   AK-47s.  What in the world were you going to do

24   with those?

25          THE DEFENDANT:  Zero AK-47s, sir, is the

1   truth.

2          THE COURT:  What did you have?  What kind

3   of guns did you have?

4          THE DEFENDANT:  A variety that would be

5   typical of a collector or an enthusiast, a little

6   of everything, some which would be totally

7   impractical for any sort of a violent or illegal

8   act, others which would be suitable for --

9          THE COURT:  Well, let me make this real

10  clear to you, Mr. MacGuineas.  You can't have any

11  weapons anymore.

12         THE DEFENDANT:  I understand.

13         THE COURT:  Not one.  Not one.  Because

14  that's another crime now, possessing a weapon.

15  Even if the weapon itself is legal, you having it

16  is not.

17         THE DEFENDANT:  I have no doubt.

18         THE COURT:  Okay.  As I referenced

19  earlier, this system will chew you up and spit you

20  out.  I can't think that spending 26 months in

21  custody and constantly being evaluated by doctors

22  is any fun.  Was it?

23         THE DEFENDANT:  No.

24         THE COURT:  Okay.  But there's more of

25  that if you continue along the same path.

1    I'm told that -- I think one of your
2  grandparents died --
3           THE DEFENDANT:  Yes, my grandmother.
4           THE COURT:  -- and that you're going to
5  inherit some money.  I don't know how much, but
6  it's more than I've got.  I don't have much either,
7  but it's more than I've got.  Please use that money
8  wisely.
9           I hope also that at some point in time you
10  can reconcile with your family, but for right now,
11  there is no communication with your family.  Okay?
12  They were the victims in this case, to some extent.
13           THE DEFENDANT:  I understand that.  I
14  agree to it.
15           I guess I could go to my probation officer
16  about -- the one thing is that my father has some
17  of my property, but I will go to the probation
18  officer.
19           THE COURT:  We'll try to make arrangements
20  to make sure -- they'll try and make arrangements
21  to make sure you get your stuff.
22           Your sentence now is time served.  You
23  already spent eight months more in custody than you
24  had to.  You're going to be on 36 months of what we
25  call supervised release.  That's like being on

1   parole.

2           You need to understand, if you violate

3   that, you can be brought back into court and sent

4   to prison for up to two years, put back on

5   supervised release again, and if you violate that,

6   you can be brought back into court and sentenced to

7   prison for up to two years, and if you violate

8   that, you can be brought back into court, sent back

9   to prison for up to two years.

10          So what I'm trying to tell you,

11   Mr. MacGuineas, is I could be in your life for a

12   very long time.  That's not what I want.  Okay?

13              THE DEFENDANT:  (Nodding.)

14              THE COURT:  I hope that you don't want

15   that either.

16          You'll participate in a program of

17   substance abuse treatment prescribed by the

18   probation department, mental health program as

19   prescribed by the probation department.

20          You'll be in a halfway house to begin with

21   for up to 180 days.  No alcohol.  The only drugs

22   you're to take or medicine to take is that

23   prescribed to you by a doctor.  We're going to have

24   you evaluated again to see if you do need

25   medication.

1          You haven't had anything for the last two

2     years, have you, from a mental health standpoint,

3     medication?

4          THE DEFENDANT:  That's correct.

5          THE COURT:  Do you think you need

6     medication?

7          THE DEFENDANT:  I am satisfied with the

8     opinion of Dr. Goldstein, who found that I needed

9     no medication.  I am satisfied with his opinion.  I

10    defer to his --

11         THE COURT:  Dr. Goldstein.  I forgot which

12    one he was.

13         MR. LABER:  I had sent a letter last

14    week.  There was a two- or three-page kind of an

15    intake report from Brooklyn, which -- well, you

16    have that.

17         THE DEFENDANT:  It was the most recent.

18    It was in -- I saw him in 2008, in November of

19    2008, and he found that I had no serious symptoms.

20    He found that I did have alcohol abuse, which is in

21    remission, and I agree with that.

22         THE COURT:  I hope it's been in remission

23    for the last two years since you've been locked up.

24         THE DEFENDANT:  Well, sir, it has, and

25    actually, there is alcohol in jail, but I chose not

1    to drink any.  I have no --

2           THE COURT:  Well, I believe you can get

3    almost anything you want in jail.  I've been doing

4    this for a long time, Mr. MacGuineas.

5           THE DEFENDANT:  Yeah, I passed it up.  I'm

6    glad -- I'm glad I'm done with alcohol.  I know I

7    had a -- had a problem, and it would be a problem

8    if I were to return to drinking.  There is no

9    question.

10          THE COURT:  You're going to have some

11   counseling, Mr. MacGuineas.  We're going to keep an

12   eye on you.  Hopefully the eye tells us nothing but

13   that you're behaving yourself and got back on track

14   in your life.

15          But if it tells us something else, if it

16   tells us you need medication, you're going have to

17   take it.  Do you understand?

18          THE DEFENDANT:  Uh-huh.

19          MR. LABER:  You have to say "yes."

20          THE COURT:  He said "uh-huh."  I assume

21   that to be yes.

22          Is that correct?

23          THE DEFENDANT:  "Uh-huh" means yes.

24          THE COURT:  If it tells us you need

25   anything, you're going to have to do it.  If you

```
1   don't do it, that brings you back in front of me,
2   and you'll go back to prison.
3           Do you understand?
4           THE DEFENDANT:  Yes.
5           THE COURT:  Let's not put either one of us
6   in that situation.  Okay?
7           THE DEFENDANT:  Yes.
8           THE PROBATION OFFICER:  Your Honor, just
9   for the record, are you ordering, then, a new
10  mental health evaluation?
11          THE COURT:  Let's see how he does for the
12  first few months, and if need be, I'll order one.
13          THE PROBATION OFFICER:  And are you going
14  to order search conditions as well?
15          THE COURT:  Yes.  Search conditions are
16  definitely there.
17          No alcohol, no drugs unless they're
18  prescribed to you by a doctor.  Okay?
19          THE DEFENDANT:  Understood.
20          THE COURT:  But there will be counseling.
21  Mr. -- there will be -- he is to be in mental
22  health counseling.
23          THE PROBATION OFFICER:  Yes, sir.
24          THE COURT:  And if the mental health
25  counselors decide you need medication, you're going
```

1   to have to take it.  Do you understand?

2           THE DEFENDANT:  Yes.

3           THE COURT:  You're not to have any contact

4   with the victims until probation and I say so.  Do

5   you understand?

6           THE DEFENDANT:  Yes.

7           THE COURT:  We'll make arrangements to

8   make sure you get your property and so forth from

9   your father.

10           THE DEFENDANT:  Thank you.

11           THE COURT:  And whatever arrangements need

12   to be made to get your inheritance and stuff, we'll

13   try and do whatever we can.  Okay?

14           THE DEFENDANT:  Thank you.

15           THE COURT:  Ms. Anderson?

16           MS. ANDERSON:  Just a couple of things.

17   In Mr. MacGuineas' numerous letters that he has

18   sent to the Court, he's made reference to medical

19   and psychiatric evaluations that have been done in

20   other jurisdictions.  In fact, just this morning,

21   he mentions one from a Dr. Goldschmidt.

22           THE COURT:  Goldstein.

23           MS. ANDERSON:  I made requests for those

24   records, Your Honor, and they were not provided to

25   me.  I believe that the Government is entitled to

1   those, number one, since they -- he raised those

2   evaluations in the letters that he sent to the

3   Court, and again, he made mention of those letters

4   again this morning.

5           I believe that there's -- if he has any

6   kind of privilege, I believe it's been waived.  And

7   I believe that the Government is now entitled to

8   get a copy of those records.

9           THE COURT:  You're talking about the

10  things he filed on December the 2nd?

11          MS. ANDERSON:  He did not include any kind

12  of medical --

13          THE COURT:  That's true, he didn't.

14          MR. LABER:  Your Honor --

15          MS. ANDERSON:  Go ahead.

16          MR. LABER:  I know that Ms. Anderson was

17  out of town the last two or three days, and I had

18  sent Your Honor that medical record, and I sent her

19  a copy of that as well, so that -- I did have --

20  you didn't get that yet?

21          MS. ANDERSON:  No, I didn't.

22          MR. LABER:  I'll --

23          THE COURT:  All right.

24          MR. LABER:  When you give it back to me,

25  I'm make sure she gets a copy.

```
 1                THE COURT:  All right.

 2                MS. ANDERSON:  Also, Your Honor, what

 3    about a fine?

 4                THE COURT:  I'm not going to fine

 5    Mr. MacGuineas.  The only reason I'd fine him is

 6    because he has money to pay it.  He spent an extra

 7    eight months in custody.  That's enough.

 8                THE DEFENDANT:  Thank you.

 9                MS. ANDERSON:  All right.  I just wanted

10    to point out that again, the defendant will be

11    receiving a large chunk of money in the form of --

12    due to the death of his grandmother, he's going to

13    be inheriting a lot of money.

14                THE COURT:  That's true.

15                MS. ANDERSON:  And the Government believes

16    that a fine is appropriate.

17                Also, just for the record, Your Honor, I

18    want to make it clear that if any kind of mental

19    health provider believes that Mr. MacGuineas needs

20    medication, then Mr. MacGuineas understands that he

21    needs to take that medication.

22                Furthermore, if any mental health

23    provider, even before the next couple of months is

24    up, believes that he needs an evaluation, that that

25    too will be performed.
```

```
 1            THE COURT:  It will be.

 2            MS. ANDERSON:  Thank you.

 3            THE COURT:  Mr. MacGuineas, you're going

 4    to start off with substance abuse treatment, mental

 5    health evaluation and treatment.  You're going to

 6    start off in a halfway house.

 7            Oh, you do owe a $100 special assessment

 8    though.  That one I'm -- that's not a fine.  You

 9    have to pay that, and I need it paid within six

10    months of today's date.

11            THE DEFENDANT:  Yes, sir.

12            MR. LABER:  Appeal has been waived.

13    Appeal has been waived.

14            THE COURT:  Appeal has been waived,

15    correct.

16            Mr. MacGuineas, let's not meet again.

17            THE DEFENDANT:  Okay.

18            MR. LABER:  I have his original driver's

19    license --

20            THE COURT:  Oh, $210.  Ms. Anderson, do

21    you know where that is, the money he had when he

22    was arrested?

23            MS. ANDERSON:  I sure don't, Your Honor,

24    but I can make an inquiry.

25            THE COURT:  We'll try and make sure to
```

1   find it and get it back to you.

2          MR. LABER:  I have his original driver's

3   license.  I'd like to give it to him now.

4          I can't?  Can I give it to you?

5          THE COURT:  Okay.  Give it to the

6   marshal.  They'll make sure he gets it before he

7   gets released.

8          MR. LABER:  I had some other documents,

9   which I'm going to withhold.  Obviously, his

10  concealed weapons permit, I have that in the file,

11  but I'm not going to give it to him unless there is

12  a court order.

13         THE COURT:  Mr. MacGuineas, you don't need

14  a concealed weapons permit anymore.

15         THE DEFENDANT:  I think not.

16         THE COURT:  He can't have it.

17         MS. ANDERSON:  And Judge, could the Court

18  order that his 25 weapons that were seized from his

19  apartment be forfeited?

20         THE COURT:  Pursuant to the plea, they're

21  forfeited.

22         MS. ANDERSON:  Thank you.

23         THE DEFENDANT:  The -- we agreed, the best

24  of my recognition, that I would never -- I

25  understand I will never possess those weapons, but

1    rather than forfeiting them, that I would be

2    allowed to make arrangements for them to be sold,

3    and --

4            THE COURT:  I don't recall.  Was that part

5    of the plea agreement, Ms. Anderson?

6            MS. ANDERSON:  I don't believe so.  There

7    was some discussion of that during the early time

8    that he pled guilty.  However, the Government

9    believes that circumstances have now changed.

10           Judge, I'm confident that we can resolve

11   this issue --

12           THE COURT:  See if you and Mr. --

13           MS. ANDERSON:  -- on our own.

14           THE COURT:  If you can't, get back to me.

15           MS. ANDERSON:  Okay.

16           THE COURT:  All right.

17           MR. LABER:  Just for the record, I have

18   the plea agreement in front of me.  That is -- I

19   don't see any forfeiture in there, so --

20           THE COURT:  My biggest concern is he not

21   have them.

22           THE DEFENDANT:  Yeah.

23           THE COURT:  Okay.

24           THE DEFENDANT:  And I --

25           THE COURT:  If you guys can arrange an

1  agreement where they get sold to somebody else and

2  you don't touch them, that's fine by me.  All I'm

3  concerned about is you don't get them back.

4  THE DEFENDANT:  Nowhere near them.

5  THE COURT:  All right.  Them or any

6  others.

7  THE DEFENDANT:  Right.

8  THE COURT:  Okay.  Good luck to you,

9  Mr. MacGuineas.

10  THE DEFENDANT:  Thank you.

11  MR. LABER:  Thank you, Your Honor.

12  (Proceedings concluded in this matter.)

```
 1              C E R T I F I C A T E

 2

 3         I, Erica R. Grund, do hereby certify that

 4   I took the machine shorthand notes in the foregoing

 5   matter; that the same was transcribed via computer-

 6   aided transcription; that the preceding pages of

 7   typewritten matter are a true, correct, and

 8   complete transcription of those proceedings

 9   ordered, to the best of my skill and ability.

10         Dated this 5th day of February, 2010.

11

12                            s/Erica R. Grund
                           Erica R. Grund, RMR, CRR
13                         Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```