```
1                IN THE UNITED STATES DISTRICT COURT

2                        DISTRICT OF ARIZONA

3

4   UNITED STATES OF AMERICA

5   vs.                                      CR-07-1838-TUC-RCC

6   DONALD BIARD MACGUINEAS,

7             Defendant.
    _____
8
                                             July 8, 2010
9                                          Tucson, Arizona

10
                             STATUS HEARING
11

12        BEFORE THE HONORABLE RANER C. COLLINS
                UNITED STATES DISTRICT JUDGE
13

14
                          A P P E A R A N C E S
15

16  For the Government:      Beverly K. Anderson
                             Assistant U.S. Attorney
17

18  For the Defendant:       Gary S. Kneip
                             Attorney at Law
19
    Court Reporter:          Erica R. Grund, RDR, CRR
20                           Official Court Reporter
                             405 W. Congress Street
21                           Tucson, Arizona 85701

22

23

24

25     Proceedings prepared by computerized realtime
                          translation
```

```
 1                 P R O C E E D I N G S
 2            THE COURT:  This is Case No. 07-1838,
 3   Donald Biard MacGuineas, present in custody.
 4            Show that Mr. Kneip appears on his
 5   behalf.  Show that Ms. Anderson appears on behalf
 6   of the Government.
 7            This is the status hearing I set last
 8   week.  We had a hearing last week in which we hoped
 9   to have Mr. Kneip present, but because of an
10   emergency in his family, he wasn't able to be
11   here.
12            And Mr. MacGuineas, I think you heard sort
13   of the tail end of the discussion I had with
14   Mr. Kneip about some of the problems going on with
15   his life, but at any rate, he's now ready to
16   represent you in this matter.
17            Mr. Kneip, you were about to say
18   something?
19            MR. KNEIP:  Oh, yes.  I just conferred
20   with my client and explained to him how it would be
21   necessary for me to ask that this be continued.
22            I'm going to ask for 30 days, because I
23   don't expect -- hopefully my wife goes from a cast
24   to a boot next Monday, and if that in fact happens,
25   then she'll be able to take care of herself, which
```

```
 1   she can't do right now.
 2             I haven't gotten the petition for
 3   revocation or any of those things, so I'll
 4   contact -- maybe Beverly can send a copy to my
 5   office.
 6             THE COURT:  Mr. Laber has the complete
 7   file.  I'll make sure he sends it to your office.
 8             MR. KNEIP:  I have it.  He did get it over
 9   to my office.
10             THE COURT:  You just don't have a copy of
11   the petition.
12             MR. KNEIP:  No.  I have all the other
13   stuff, but --
14             THE COURT:  Okay.
15             MR. KNEIP:  -- no petition.
16             THE COURT:  In fact, maybe we can print
17   you one up now.
18             MR. KNEIP:  That would be great.
19             THE COURT:  Mr. MacGuineas, before you
20   make -- Mr. MacGuineas at one point was considering
21   that he might want to represent himself in this
22   proceeding, and he agreed that before he made that
23   final decision, he would speak with another
24   attorney and see where he was at.
25             Is that right Mr. MacGuineas?  Sort of?
```

1     THE DEFENDANT:  Yeah.

2     THE COURT:  Okay.  Is it okay if we
3  continue the matter for about 30 days from today?

4     THE DEFENDANT:  Do I have a choice?

5     THE COURT:  Mr. MacGuineas, let me be
6  blunt.  There is an old saying, and I think you're
7  familiar with it:  He who represents himself has a
8  fool for a client.  Okay?

9     There is also a saying that one who goes
10 into court with an attorney who's not prepared to
11 represent him is even worse off.

12    So in answer to your question, you don't
13 have a good choice.  How's that?  That's the best
14 answer I can give you.

15    MR. KNEIP:  Could have I just a second?

16    (Sotto voce discussion with defense
17    counsel and the defendant.)

18    THE DEFENDANT:  I'm not -- I've been --
19 I've been consenting to these delays for a few
20 years.  I'm not consenting to any more
21 postponements.

22    THE COURT:  I think the hearing is set for
23 next week, is it not, Ms. Anderson?

24    MS. ANDERSON:  Judge, we have an
25 evidentiary hearing on July 26th on a petition to

```
 1   revoke.
 2              THE COURT:  Correct.
 3              MR. KNEIP:  If I can have a few minutes to
 4   see if there is some way I can accommodate his
 5   wishes?
 6              THE COURT:  Sure.
 7              MR. KNEIP:  What time is that, Beverly?
 8              MS. ANDERSON:  It's at nine o'clock, and
 9   it's set for all day.
10              THE COURT:  Who set it for all day?  I
11   didn't.
12              MS. ANDERSON:  I called the magistrate
13   judge, and they asked me how long I thought it
14   would take, and I told him that it's going to take
15   a significant amount of time.
16              I've got at least four to five witnesses
17   from New Beginnings to put on the stand.  I also
18   have Donna Salazar.  So I told the Court that that
19   was my best estimate.
20              THE COURT:  Who is that in front of?
21              MS. ANDERSON:  It's in front of --
22              THE CLERK:  Magistrate Velasco.
23              MS. ANDERSON:  Yes.
24              MR. KNEIP:  Has there been a mental health
25   exam in this case?
```

1                THE COURT:  A couple years back.

2                MR. KNEIP:  Okay.  Well, frankly, Judge,

3    the little bit I can tell about this case right

4    now, that's liable to be the first thing I'm going

5    to do is ask for a mental health exam.  I think --

6    I think it would be malpractice not to.

7                THE COURT:  Before you think about asking

8    for that, you might want to speak to

9    Mr. MacGuineas.

10               MR. KNEIP:  Clearly there is a lot here

11   that I'm going to have to pay attention to.

12               THE COURT:  That's true.

13               MR. KNEIP:  And I -- I think the 26th is

14   just going to be impossible, because I have -- I'm

15   still not out of the caregiver situation, and

16   frankly, there is a lot coming at me from various

17   very generous continuances in the next couple

18   weeks, and I don't think I would be able to prepare

19   for the man.

20               If he doesn't care, then I think he's

21   making a very bad mistake in terms of whether I'm

22   prepared or not.  If they're talking about a full

23   day hearing, that's not the regular standard

24   revocation.

25               THE COURT:  That's true.

```
 1              MR. KNEIP:  I think the circumstances --
 2   and of course the judge knows much more than --
 3              THE COURT:  Let me ask you this.  When can
 4   you get out and talk to Mr. MacGuineas, because
 5   that's what he really needs, is someone to come out
 6   and talk to him.
 7              MR. KNEIP:  I understand that.  And --
 8              THE DEFENDANT:  May I say something?
 9              THE COURT:  Sure, Mr. MacGuineas.
10              THE DEFENDANT:  I mean, if it was a matter
11   of he needs extra time to work on my case, that
12   would be one thing, but it seems like it's a matter
13   that he needs extra time to take care of some
14   personal things, which -- which, you know, that's
15   okay, maybe that's what he needs to be doing, but
16   then maybe I need a different lawyer, if that's
17   what he needs to be doing.
18              MR. KNEIP:  I don't think he needs a
19   different lawyer, and frankly, he may be not
20   completely understanding what I'm saying.
21              Preparation for a standard revocation, if
22   you're anticipating a half an hour hearing, that's
23   one thing.  Preparing for what's anticipated to be
24   a full-day hearing is quite another thing.
25              So in terms of why I need -- barring
```

1  everything that's happened in my life in the last
2  two months, I'd still be asking for a continuance
3  had I just been appointed in this circumstance.
4             THE COURT:  I understand that.
5             Mr. MacGuineas, he's not quite saying the
6  only reason he needs the time is because of his
7  wife's situation.  That's not it.
8             He's saying he sees this as being somewhat
9  more complicated than what might be considered the
10 norm, and if he's being told that he's going to
11 have a half-day hearing on July -- excuse me -- a
12 full-day hearing on July 26th, he's not going to be
13 up to speed.  That's what he's saying.
14            Whether his wife was sick or not, that's
15 what he's saying.  Do you understand?
16            THE DEFENDANT:  Yeah, yeah, I understand
17 that there's two factors, and it's not really clear
18 how much time he wants to help me and how much time
19 he wants to help his family.
20            THE COURT:  Once he starts helping you,
21 don't forget he's going to be helping you.  Don't
22 get it twisted, Mr. MacGuineas.  He's going to put
23 his efforts into you.
24            Now, nobody's going to be working for you
25 eight hours a day, five days a week.  That ain't

1   going to happen by anybody, other than you.  Okay?
2          He's just trying to tell you that if he's
3   got to be ready for a full-day hearing on July
4   26th, irrespective of anything else going on in his
5   life, he's not going to be ready.  That's what he's
6   telling me.
7          And this is the first time you've seen him
8   today, the first time he's seen you.
9          THE DEFENDANT:  Right.
10         THE COURT:  He hasn't had a chance to even
11  talk to you about what's going on and see what you
12  want to have accomplished.  You know, July 26th is
13  basically two weeks from today.
14         THE DEFENDANT:  Yeah.  No, I mean, it's --
15  the part about giving him time to work on my case,
16  that sounds like a good idea.  I would be willing
17  to -- I don't think that's a bad idea.  I don't
18  want to rush into this, but I mean, two weeks ago,
19  when you discharged Edward Laber --
20         THE COURT:  Has it been two weeks?  It's
21  been about two weeks, hasn't it?
22         THE DEFENDANT:  Because I came back last
23  week unrepresented.
24         THE COURT:  Don't forget, I didn't
25  discharge Ed Laber.  You discharged Ed Laber.

1         THE DEFENDANT:  No, I did not.
2         THE COURT:  Okay.
3         THE DEFENDANT:  No, I mean, I did not
4    discharge him.  That was his motion.  I know how to
5    -- I know how to contact the Court when I need to.
6         THE COURT:  Yes, you do, Mr. MacGuineas.
7         THE DEFENDANT:  And I did not.  I did not
8    call that hearing.  I don't know how it got twisted
9    around.  I know he didn't want to say he was
10   quitting, but I didn't discharge him.
11        THE COURT:  All right.
12        THE DEFENDANT:  But anyway, I had -- I
13   don't know.  I have gone two weeks and I haven't
14   gotten anywhere.  I'm concerned.
15        If his wife needs him, then she needs him,
16   but I'm concerned about how much I'm going to get.
17   And, I mean, I saw last year that when lawyers are
18   not diligent in my case, I'm the only one who pays,
19   and that concerns me.
20        THE COURT:  I understand and Mr. Kneip
21   does too.
22        MR. KNEIP:  I dare say there are very few
23   people that would be able to say that I approach
24   any case without excess diligence, and the real
25   issue that he needs to consider is that I just

1 | received two bankers boxes of materials, and
2 | understanding that what went on at the trial
3 | doesn't have anything to do with what this hearing
4 | is going to be, I still have to have an
5 | understanding, a basic understanding of those
6 | circumstances just to understand what this
7 | situation is all about.
8 |         So I will be taking those boxes home with
9 | me, which is why I can say I can be ready in a
10 | month, because I'll start working on the case right
11 | away.
12 |         THE COURT:  Mr. MacGuineas?
13 |         THE DEFENDANT:  Okay.  When can I expect
14 | to start consulting with you?
15 |         MR. KNEIP:  Next week.
16 |         THE DEFENDANT:  I'm willing to start out
17 | on that plan with the continuance --
18 |         THE COURT:  All right.
19 |         THE DEFENDANT:  -- as proposed.
20 |         THE COURT:  Let's do this.
21 |         MR. KNEIP:  Will this matter be set in
22 | front of Your Honor?
23 |         THE COURT:  I'm just looking at my
24 | calendar to see if I can accommodate that right
25 | now.

1           Mo, what's my 23rd of August look like?
2           (Off the record.)
3           THE COURT:  I can do it on the 23rd, but
4   there will be a couple of interruptions.
5           MR. KNEIP:  That's fine with me, Judge.
6   I'll be ready.
7           THE COURT:  All right.
8           MS. ANDERSON:  And with me as well.  The
9   only issue, Your Honor, may be if I have some
10  witnesses that are unavailable.  I will check with
11  them, and if there is any issues, I'll advise the
12  Court.
13          THE COURT:  All right. Let's go August
14  23rd, beginning at 10 o'clock.  If there's any
15  issue that comes up that needs to be handled by me,
16  let me know immediately, Ms. Anderson, Mr. Kneip,
17  Mr. MacGuineas.
18          MS. ANDERSON:  I will, Your Honor.
19          THE COURT:  Mr. MacGuineas, I know that
20  you'll let me know immediately, won't you?
21          THE DEFENDANT:  Yes, sir.
22          THE COURT:  All right.  August 23rd at 10
23  o'clock.  I'll let Judge Velasco know that I'm
24  going to take this so he doesn't have to worry
25  about trying to schedule another day himself.

```
1            MS. ANDERSON:  Thank you, Judge.
2            THE COURT:  Thank you.
3            MR. KNEIP:  Thank you, Judge.
4            (Proceedings concluded in this matter.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1      C E R T I F I C A T E

2

3          I, Erica R. Grund, do hereby certify that
4    I took the machine shorthand notes in the foregoing
5    matter; that the same was transcribed via computer-
6    aided transcription; that the preceding pages of
7    typewritten matter are a true, correct, and
8    complete transcription of those proceedings
9    ordered, to the best of my skill and ability.
10         Dated this 16th day of August, 2011.
11
12                              s/Erica R. Grund
                            Erica R. Grund, RDR, CRR
13                           Official Court Reporter